665 So.2d 95 (1995)
STATE of Louisiana Through the DEPARTMENT OF SOCIAL SERVICES, et al.
v.
Eli DORSEY.
No. 95 CA 0446.
Court of Appeal of Louisiana, First Circuit.
November 9, 1995.
*96 Kent Mayeaux, Baton Rouge, for Plaintiff-Appellant-State.
Karen D. Downs, Baton Rouge, for Defendant-Appellee-Eli Dorsey.
Before LOTTINGER, C.J., and GONZALES and FITZSIMMONS, JJ.
FITZSIMMONS, Judge.
The State of Louisiana, through the Department of Social Services, Office of Family Support (State), filed a petition to establish the paternity of the alleged father, Mr. Eli Dwayne Dorsey. The trial court found the testimony of Mr. Dorsey more credible than the testimony of the mother, Ms. Linda Ratcliff. The trial court noted that Louisiana cases hold that scientific testing alone cannot establish paternity. Thus, based on the credibility determinations and the totality of the circumstances, the trial court found that Mr. Dorsey was not the father of the child. The court signed a judgment on March 5, 1994, in favor of Mr. Dorsey. On May 19, 1994, the trial court denied the State's motion for a new trial. The State appealed. We affirm.

PATERNITY
Although scientific testing, specifically DNA and related tests, are becoming more reliable than earlier blood tests, neither the statutory law nor the jurisprudence mandates DNA testing as the sole factor in a determination of paternity. Blood tests are just one factor to be weighed by the trier of fact. See Didier v. Fasola, 597 So.2d 450, 454 (La.App. 1st Cir.1991); State ex rel. Gray v. Hogan, 613 So.2d 681, 683 (La.App. 5th Cir.1993); State v. Montgomery, 574 So.2d 1297, 1301 (La.App. 3d Cir.), writ denied, 577 So.2d 38 (La.1991). Whether the plaintiff has met the burden of proof and presented sufficient evidence of paternity is a fact determination for the trier of fact. See Didier v. Fasola, 597 So.2d at 456; State v. Smith, 605 So.2d 222, 224 (La.App.2d Cir. 1992); State v. Montgomery, 574 So.2d at 1300.
Louisiana R.S. 9:397.3 A requires that the results of the initial blood or tissue test, accompanied by a sworn affidavit of certification by the expert who supervised the test, be filed in the record. Section A also requires notice to all parties that the report has been filed. Section C of the statute provides that additional testing "be proved by the testimony of the expert." It does not *97 simplify the customary admissability of evidence requirements for additional tests. See Didier v. Fasola, 597 So.2d at 453.
Ms. Ratcliff testified that she and Mr. Dorsey had sex one time and that he was the father of the child. Mr. Dorsey admitted that he had been in the company of Ms. Ratcliff the night in question, but that he had only offered her a ride home. He denied having sex at any time with Ms. Ratcliff.
The trial court found the testimony of Mr. Dorsey more credible than the testimony of Ms. Ratcliff. After a thorough review of the record, we find no manifest error in the credibility determinations of the trial court. Even when the appellate court might have made a different determination based on the evidence, the factfinder's choice between two permissible views cannot be manifestly or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
The State argues that the scientific evidence was so strong that the trial court erred in choosing to believe Mr. Dorsey. In effect, the State argues that Ms. Ratcliff's testimony, plus strong scientific evidence, met her burden of proof. The burden then shifted to Mr. Dorsey to rebut the evidence, and Mr. Dorsey failed in that burden. Under different circumstances, that argument might have merit. In this case, the State's own expert, Dr. J. Craig Cohen, admitted that his lab's request for accreditation had been rejected. Dr. Cohen discounted the reliability of his own tests beyond the admittedly conservative minimum Paternity Index. Dr. Cohen's report concluded that there was a high likelihood that Mr. Dorsey was the father, but Dr. Cohen testified that he had confidence only in the minimum Paternity Index (the likelihood that Mr. Dorsey was the father) of 100 to 1. In other words, Dr. Cohen projected a 1% chance that Mr. Dorsey was wrongly included in the group of men that could be the child's father.
The written results of the initial DNA test, performed by Dr. Cohen's lab at the State's request, gave various other numerical findings, including a Paternity Index of 2,075,119 to 1. Such a result, if supported by Dr. Cohen's expert testimony, would have greatly reduced the chance that Mr. Dorsey had been wrongly included in the group of possible fathers and would have supported an extremely high likelihood that Mr. Dorsey was the father. As blood and tissue tests become more reliable, the alleged parent may need more evidence to rebut the plaintiff's case than a simple denial that sexual intercourse took place.

SECOND DNA TEST
We find no error of law in the court's failure to admit into evidence a second DNA test, obtained by Mr. Dorsey from an out of state lab, but offered as evidence by the State. The record reveals that the second test did not meet the requirements of La. R.S. 9:397.3 A or C. The record contains no certification by sworn affidavit from the expert who supervised the test. The record contains no evidence that the notice of filing was sent to all the parties. The record does not support the argument that the second test was the initial test, or a product of the initial testing. Section C of La.R.S. 9:397.3 requires that additional tests be proved by the testimony of the expert that conducted or supervised the test. If the State wanted the second test admitted, the State should have laid the proper foundation.
Based on our finding of no manifest error in the trial court's credibility determinations, and the weakened scientific evidence as presented at trial by Dr. Cohen, we cannot say that the trial court clearly erred in finding that Mr. Dorsey was not the father. See State ex rel. Gray v. Hogan, 613 So.2d at 683; State v. Montgomery, 574 So.2d at 1300-1301.

MOTION FOR NEW TRIAL
For the same reasons, we find no error in the trial court's denial of the State's motion for a new trial on the basis of the court's failure to admit the second test and the claim that the paternity finding was contrary to the law and the evidence. The third alleged basis for the motion for a new trial, also does not provide sufficient grounds for a new trial. The alleged newly discovered evidence, could have been discovered, with due diligence, before trial. The State made no showing *98 that the ability of Ms. Ratcliff to have obtained a telephone number for Mr. Dorsey's wife or mother, at the time in question, would have changed the result of the trial. The trial court did not discount all of Ms. Ratcliff's testimony, but found many inconsistencies. The trial court specifically found Mr. Dorsey more credible. See La.C.C.P. art. 1972(2) & 1973; Village of Varnado v. Fire Dept., 563 So.2d 946, 950-51 (La.App. 1st Cir.1990); Brousseau v. Tucker, 479 So.2d 446, 448-49 (La.App. 1st Cir.1985), writ not considered, 481 So.2d 1329 (La. 1986).
Therefore, we affirm the judgment of the trial court. The costs of the trial and the appeal, $2782.18, are assessed to the State of Louisiana, Department of Social Services, Office of Family Support.
AFFIRMED.